[Crim. No. 1958. Second Appellate District, Division One.—December 4, 1930.]

THE PEOPLE, Respondent, v. HARRY McDONALD et al., Defendants; VICTOR PIPITONE et al., Appellants.

W. T. Kendrick, P. R. Hornbrook and Moses C. Davis for Appellants.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

HOLLZER, J., *pro tem.*—Defendants Pipitone and Cuscio, together with three others named McDonald, Bono and De Maria, were charged with the crime of possessing a still. The cause having been dismissed as to McDonald, the lat-

ter appeared as a witness on behalf of the prosecution. The remaining four defendants were convicted of the offense charged. At the trial defendant Bono admitted he had operated the still under the direction of McDonald, but exonerated all of the other defendants. This appeal is prosecuted by the defendants Pipitone and Cuscio from the judgment of conviction and the orders denying their motions for a new trial.

It is conceded that McDonald was an accomplice. The principal question on this appeal is whether the evidence was sufficient to meet the requirements of section 1111 of the Penal Code with respect to corroboration of his testimony. This section reads as follows:

"A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

Independently of the testimony of the accomplice McDonald, the evidence showed that the still in question was located on certain premises belonging to McDonald. These premises consisted of two dwelling-houses, one being in the rear of the other, together with a garage adjacent to the rear house. The still was in the rear building.

At the time of his arrest the defendant Pipitone attempted to throw away two note-books which contained entries tending to connect him with the defendants in the operation of the still. It further appeared that the defendant De Maria was accompanied by Pipitone at the time the former negotiated for the lease of the rear building, the lease being taken in De Maria's name. It was also shown that about a month later Pipitone was on the premises in the vicinity of the rear building, and on said occasion he was again accompanied by De Maria. The defendant Pipitone further admitted that he had sold large quantities of sugar to McDonald, which were delivered to these same premises.

Testifying in his own behalf at the trial, Pipitone denied knowing the defendant Cuscio prior to his arrest, and, particularly, denied being present at one Sam Blum's. Malt House, in company with Cuscio, De Maria, McDonald and certain other parties, a few weeks prior to said arrest. On the other hand, two witnesses, produced by the prosecution, testified that such meeting had taken place.

Likewise, at the time of De Maria's arrest, there was found on his person a book containing certain entries, shown to be in the handwriting of Pipitone, and which tended to connect him with De Maria's activities in the operation of the still.

With respect to the defendant Cuscio, who was a cousin of De Maria, the evidence given by the witnesses, in addition to the accomplice McDonald, disclosed that Cuscio, on a number of occasions during the period the still was in operation, had driven an automobile to the premises in question; that on each of these occasions he had walked to the rear of the premises, then he departed leaving the automobile for varying lengths of time, and returned later the same day and drove away the automobile.

Defendant Cuscio also denied on the witness-stand that he had been acquainted wih Pipitone prior to his arrest.

Without undertaking to set forth all of the evidence adduced at the trial, we deem it sufficient to say that our examination of the record convinces us that such evidence, independently of the testimony given by the accomplice McDonald, clearly showed not only a guilty knowledge on the part of the defendants Pipitone and Cuscio as to the possession and operation of the still by McDonald and Bono, but also tended to connect the appellants with such possession.

At the trial a witness named Levin was interrogated by the prosecution concerning a telephone conversation he claimed to have had with either Mr. Hornbrook, attorney for defendants Pipitone and Cuscio, or Mr. Shoop, attorney for the defendant Bono. On recross-examination, this witness testified that during said telephone conversation, he had been asked to testify that he had never seen the defendants, and that he had answered that he would not lie for anybody.

At the conclusion of the People's case, the following colloquy took place between Mr. Hornbrook and the court:

"Mr. Hornbrook: If the Court please, I don't know whether or not there is any rule against an attorney taking the stand. Does your Honor have any knowledge of it?

"The Court: The only rule in this department is that an attorney who takes the stand cannot argue the case. He may take the stand, if he wants to, but he is precluded from making any argument to the jury."

It is contended that this ruling deprived the appellants of the testimony of Mr. Hornbrook, their attorney, thereby leaving the testimony of the witness Levin stand uncontradicted. Such ruling is therefore claimed to have been prejudicially erroneous.

An examination of the record, however, fails to disclose that Mr. Hornbrook advised the trial judge that it was he who desired to testify in contradiction of the evidence given by the witness Levin. Furthermore, counsel did not take the witness-stand, and hence it cannot be said that any such rebuttal was offered or that these appellants were deprived of any of their rights.

Appellants also attack the ruling of the lower court sustaining an objection to the following question propounded upon cross-examination of the witness Beatrice McDonald: "When was the first time that you did have knowledge that still was in operation there?"

When asked by the court to state the purpose of the question, counsel responded that it was "purely impeachment"; "testing the credibility of the witness"; "just going generally to her credibility as a witness, not any particular point, only her knowledge of what was going on there".

It is contended for the first time on this appeal that this question should have been allowed, because, if the witness had admitted that she had known the still was in operation, such answer would have tended to prove that she was an accomplice, and hence her testimony would not be regarded as corroborating that of her husband.

It is a sufficient answer to this point to say that counsel having failed to disclose to the trial court that the purpose of this question was the one now advanced before this court, the objection here presented comes too late, and hence the ruling of the lower court must be sustained.

The last contention advanced by appellants is to the effect that the court erred in failing to instruct the jury

188

that the witness Beatrice McDonald, wife of the defendant McDonald, was an accomplice as a matter of law.

It is a sufficient answer to this contention to point out that there was ample evidence tending to show that Mrs. McDonald was not an accomplice.

For the foregoing reasons the judgment of conviction and the orders denying the motions for a new trial are affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 17, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 29, 1929.